IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TELLY ALEXANDER HEATH,                              2:13-cv-01875-MA

                    Plaintiff,                      OPINION AND ORDER

          v.

GREG JONES, et al.,

                    Defendants.


TELLY ALEXANDER HEATH
SID #18386240
Eastern Oregon Correctional Institution
2500 Westgate
Pendleton, OR 97801-9699

          Plaintiff, *Pro Se*

ELLEN F. ROSENBLUM
Attorney General
ROBERT E. SULLIVAN
Senior Assistant Attorney General
Department of Justice
1162 Court Street N.E.
Salem, OR 97301-4096

          Attorneys for Defendants


MARSH, Judge


1 - OPINION AND ORDER

Plaintiff, an inmate at the Eastern Oregon Correctional Institution, brings this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that his confinement in the Oregon Department of Corrections (ODOC) Intensive Management and Behavioral Health Units violated his Eighth Amendment right to be free from cruel and unusual punishment. Plaintiff names ODOC officials as defendants, including mental health specialists and counselors, classification officers, and members of the Special Needs Inmate Evaluation Committee (SNEIC). Currently before the court is defendants' motion for summary judgment (#59). For the reasons set forth below, defendants' motion is granted.

## SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014). The moving party bears the burden of proving the absence of a genuine dispute of material fact. *U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*, 692 F.3d 1009, 1014 (9th Cir. 2012). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Scott v. Harris*, 550 U.S. 372, 380 (2007). This court reviews the evidence in the light most favorable to the non-moving party, and must draw all reasonable inferences in favor of

2 - OPINION AND ORDER

that party.   *Tolan*, 134 S.Ct. at 1863; *Maxwell v. County of San Diego*, 697 F.3d 941, 947 (9th Cir. 2012).

## BACKGROUND

On December 3, 2013, this court screened plaintiff's amended complaint and held as follows: (1) claim one shall proceed as an Eighth Amendment claim only unless plaintiff files a second amended complaint alleging a retaliation or equal protection claim; and (2) claim two is dismissed on the basis that it is against parties not named as defendants.   Order (#12).

Because plaintiff failed to file a second amended complaint, this case shall proceed on claim one only, limited to the assertion that his confinement violated the Eighth Amendment prohibition against cruel and unusual punishment.[1]   The claim arises out of plaintiff's confinement in the Disciplinary Segregation Unit (DSU), the Intensive Management Unit (IMU), and the Behavioral Health Unit (BHU).   Accordingly, a basic understanding of those units and inmate custody classifications is necessary.

///

---

[1] Plaintiff's amended complaint does not allege a due process violation.   If it is construed as raising a due process claim to be free from confinement in special housing, summary judgment is warranted because there are no facts to support a finding that, while so confined, plaintiff's was subjected to an atypical significant hardship *in relation* to the ordinary incidents of prison life.   *See Sandin v. Conner*, 515 U.S. 472, 484 (1995).

I.    <u>**Applicable Prison Regulations**</u>

   A.    <u>**Inmate Classifications**</u>

   Oregon inmates are assigned housing consistent with their custody level, demonstrated behavior, and special needs.  OAR 291-104-0106(3)(b).  One of five levels of supervision are assigned to each inmate.  As is relevant to this case, level five is assigned to inmates who have "demonstrated behaviors causing serious management concerns, or [have] demonstrated behaviors that in the judgment of the Department present a threat sufficient to require special security housing on intensive management status."  OAR 291-104-0111(9)(b).

   B.    <u>**Housing Assignments**</u>

   1.    **Disciplinary Segregation**

   Inmates in violation of rules of prohibited conduct are placed in DSU.  OAR 291-011-0005(2).  Inmates are assigned to DSU "for only the shortest length of time necessary to achieve the purpose for which assignment was prescribed in accordance with the Department of Corrections rule on Prohibited Inmate Conduct and Processing Disciplinary Actions."  OAR 291-011-0030(1), *see also* Pltff's Reply (#71), Att. 2 & 3.  According to Dr. Daryl Ruthven, the Chief Psychiatrist at ODOC, "[i]t is the policy of the ODOC to avoid housing *any inmate with an MH3 diagnosis code*[2] in either DSU

---

   [2] Mental Health Code "MH3" is "utilized to identify inmates with a mental health diagnosis that is categorized as highest

or IMU for longer than 30 days.  Declaration of Daryl Ruthven, M.D. (#60) at ¶ 11 (emphasis added).  Plaintiff was housed in DSU for 30 days (May 19, 2013 to June 19, 2013).

### 2.   Intensive Management Unit

It is the policy of the ODOC to "[a]ssign custody Level 5 inmates, or inmates who are under investigation for or who have been charged with the . . . assault of another inmate or staff, to special security housing and programs in a designated IMU or IMU status cells separate from the general population."  OAR 291-055-0005(3)(a); DOC Policy 40.3.1(II)(C).  The SNEIC is responsible for making the initial determination whether an inmate is assigned to IMU.  DOC Policy 40.3.1(III)(B)(2).

"Inmates assigned to an IMU or IMU status cell may be temporarily assigned to other housing, treatment, program, or service units (i.e., infirmary, Administrative Housing, Disciplinary Segregation, mental health special housing, Death Row) for housing, treatment or programming as deemed necessary or advisable by the department."  OAR 291-055-0019(1)(b); DOC Policy 40.3.1(II)(D).  Behavioral Health Services (BHS) staff perform and supervise mental health services as needed.  OAR 291-055-0045(D)(I).  Officials consider an inmate's re-assignment from an IMU or IMU status cell 150 days after his initial placement on IMU

need."  Ruthven Dec., Att. 2 (DOC Policy 40.1.14, § II(A)).

5 - OPINION AND ORDER

status, and then at least every 90 days thereafter.  OAR 291-055-0031.  Plaintiff was placed on IMU status on June 19, 2013, and physically confined in IMU for a six month period from September 25, 2013, to March 26, 2014.

### 3.    Behavioral Health Unit

The BHU is "[a]n intensive behavioral management and skills training unit for inmates with serious mental illness that have committed violent acts or disruptive behavior."  OAR 291-048-0210(2).  "An inmate may be assigned to a [BHU] if the inmate has committed violent acts or disruptive behavior and is diagnosed with a serious mental illness."  OAR 291-048-0280(1).  "If an inmate is being considered for IMU assignment, and has been deemed seriously mentally ill (SMI) they will be housed in mental health special housing in lieu of IMU for the duration of the program or until there is a change in status."  DOC Policy 40.3.1, § II(D); OAR 291-048-0280(1)(c).

"An inmate assigned involuntarily to mental health special housing will remain so assigned for only the shortest length of time necessary to achieve the purpose(s) for which the assignment was prescribed."  OAR 291-048-320(2).  When an inmate is released from mental health special housing, the mental health treatment team determines the inmate's next housing assignment.  OAR 291-048-320(3).  Plaintiff was confined in BHU for a three month period from June 19, 2013, to September 25, 2013.

## II.  **Factual Background**

On February 9, 2011, plaintiff was taken into the custody of ODOC.  Ruthven Dec. at ¶¶ 6 & 14, & Att. 1.  At that time, plaintiff advised staff that he had been diagnosed with Schizophrenia, and reported auditory and visual hallucinations. *Id.* at ¶ 7 & Att. 3 at 108.  *ODOC staff classified plaintiff as Mental Health Code MH3*, and he was restricted to institutions where mental health services are available.  He was seen weekly by BHS staff.  *Id.* at ¶¶ 7, 15-16 & Att. 2 at 4 & 6, Att. 3 at 111.

Plaintiff initially was housed at the Oregon State Correctional Institution, and later at Snake River Correctional Institution (SRCI).  *Id.* at ¶¶ 18-39.  From May 19, 2013, to June 19, 2013, plaintiff was confined in DSU following a hearing in which he was found guilty of fighting with another inmate.  Pltff's Opp. to Summary Judgment (#68), Exh. 2 at 1-4; Pltff's Declaration (#69) at ¶ 4.  While confined in DSU, plaintiff wrote threatening letters and kytes to prison staff.  Ruthven Dec. at ¶ 8; Pltff's Dec. at ¶ 5.

On June 19, 2013, plaintiff was transferred to the Oregon State Penitentiary (OSP), and put on IMU status.  Ruthven Dec. at ¶¶ 8 & 40; Pltff's Dec., Exh. 2 at 5.  While on IMU status, plaintiff was confined in BHU due to his MH3 classification. Ruthven Dec., Att. 3 at 90 & Pltff's Opp., Exh. 2 at 1.  According to Dr. Ruthven, plaintiff "required maximum supervision and was

moved to IMU status because he had become threatening to staff and assaulted another inmate who required hospital level of care for his injuries." Ruthven Dec. at ¶¶ 8 & 39, & Att. 3 at 90. Additionally, plaintiff "had a history of assaulting three other inmates during his incarceration" which resulted in a security level increase to Level 5 (maximum supervision). *Id.* at ¶¶ 8 & 42; Pltff's Reply (#71) at 1.

Plaintiff was confined in BHU from June 19, 2013, to September 25, 2013. Ruthven Dec. at ¶ 40.[3] During this three month period, plaintiff was seen monthly by Psychiatrist Susan Elmore, M.D., and weekly by BHU staff. *Id.* at ¶¶ 40-44 & Att. 3 at 14-37. According to Dr. Ruthven, plaintiff's disruptive and antagonistic behavior while in BHU prevented him from participating in group counseling sessions. *Id.* at ¶¶ 9 & 45-48 & Att. 3 at 16-20, 30-32, 29-37.

On August 14, 2013, after plaintiff's third psychiatric appointment, Dr. Elmore opined that plaintiff no longer met the criteria for a formal thought disorder. *Id.*, Att. 3 at 23. At that point, Dr. Elmore diagnosed plaintiff with a "mild depressive disorder" and low frustration tolerance. *Id.* at ¶ 10 & Att. 3 at 18 & 23-24. She summarized the basis of her diagnosis as follows:

---

[3] A hearing was held concerning plaintiff's placement in Mental Health Special Housing. The hearings officer concluded that the facts substantially supported plaintiff's placement in the Mental Health Special Housing from June 19, 2013, to December 15, 2013. Pltff's Opp., Exh. 2 at 4; *see* OAR 291-048-0290.

> His behavior has improved with structure alone and he has
> form[ed] relationships with other inmates.  He does not
> isolate, or appear internally preoccupied.  He has
> clearly stated he does not hear voices, but has bad
> thoughts which compel him to act when he is angry.  He
> does not appear to have major depression, as his sleep,
> appetite, energy, and lack of suicidal ideation suggest.
> But his level of ruminating, and lability may be more
> consistent with Major Depression.  For this reason, I
> have given him the Depressive Disorder NOS. * * * At this
> time I am discontinuing the Psychotic Disorder diagnosis.

*Id.*, Att. 3 at 23.  Dr. Elmore concluded that if plaintiff had IMU

time left to serve, that it would now be appropriate for him to do

so.  *Id.*, Att. 3 at 24.  *Plaintiff was reclassified MH2* meaning he

would continue to be seen weekly by BHS staff, but would have more

options for housing assignments.  Ruthven Dec. at ¶ 10.

On September 25, 2013, plaintiff was transferred to SRCI and

housed in IMU until he "completed his programming."  *Id.* at ¶ 40;

Pltff's Opp. (#68), Exh. 2 at 1; *see* OAR 291-055-0020; DOC Policy

40.3.1(E).  Six months later, on March 26, 2014, plaintiff was

transferred back to OSP where he was confined in general population

(with the exception of a "few days" in DSU).  Ruthven Dec. at ¶ 50.

### DISCUSSION

Plaintiff alleges that Classification Manager Greg Jones,

Chief Mental Health Specialist Jana Russell, Security Captain

Peterson, Correctional Counselor Winter-Schuller, and defendants R.

Smith, Mrs. Jennings, and Mr. Christofferson violated his right to

be free from cruel and unusual punishment by confining him in IMU

and BHU in excess of six months, and beyond the 30-day maximum for

9 - OPINION AND ORDER

mentally ill prisoners.  Additionally, plaintiff alleges that while in BHU, he was not allowed to participate in "mental health groups," and was not provided "program packets."

Defendants move for summary judgment on the basis that plaintiff received mental health services that were appropriate, programmatic, and tailored to his particular needs as those needs varied over time.  Defendants argue that plaintiff's placement in BHU was appropriate as a punishment for an assault on another inmate, while also meeting his mental health needs.  Additionally, defendants argue that a mere difference of opinion between plaintiff and defendants as to the appropriate course of treatment does not give rise to an Eighth Amendment violation.

In response, plaintiff argues that the amount of time he spent in BHU and IMU violates the rules governing administrative segregation, that he posed no physical threat to the correctional officials to whom he sent threatening kytes, he is innocent of the misconduct charges leading to his initial placement in DSU and he never waived his right to a hearing.  Finally, plaintiff argues that the denial of psychiatric "Dialectical Behavior Therapy with programs and group sessions" caused him to be angry and refuse medication.

The Eighth Amendment requires prison officials to ensure that inmates receive adequate food, clothing, shelter, and medical care. *Brown v. Plata*, 131 S.Ct. 1910, 1928 (2011); *Farmer v. Brennan*, 511

U.S. 825, 832 (1994).  The constitutional requirement to provide adequate medical care extends to mental health care.  *Brown*, 131 S.Ct. at 1944; *Doty v. County of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994).  To establish unconstitutional treatment of a medical condition, including mental health care, a prisoner must demonstrate defendants acted with deliberate indifference to his serious medical need.  *Shinault v. Hawks*, 776 F.3d 1027, 1034 (9th Cir. 2015); *Doty*, 37 F.3d at 546; *Farmer*, 511 U.S. at 834-35.

In order to prove deliberate indifference, plaintiff must demonstrate that the defendants were aware of the condition and deliberately denied or delayed treatment.  *Shinault*, 776 F.3d at 1034; *Farmer*, 511 U.S. at 837-38.  A difference of opinion between a physician and a prisoner concerning what medical care is appropriate does not amount to deliberate indifference.  *Colwell v. Bannister*, 763 F.3d 1060, 1068 (9th Cir. 2014).

In the instant proceeding, there is no genuine dispute of material fact as to whether defendants were deliberately indifferent to plaintiff's serious mental health needs.  It is undisputed that while housed in BHU for three months, plaintiff was seen weekly by BHS staff, and monthly by a psychiatrist.  At the conclusion of the three months, plaintiff's treating psychiatrist opined that he no longer met the criteria for a formal thought disorder, and that his transfer to IMU was permissible.  Dr. Elmore is not included as a defendant in this action, and plaintiff offers

no evidence that Dr. Elmore's psychiatric care or diagnosis were provided with deliberate indifference to plaintiff's mental health needs.

Although plaintiff complains that he was not provided group therapy while confined in BHU, plaintiff offers no evidence that this was due to any of the defendants' deliberate indifference to his serious mental health needs. On the contrary, the only evidence in the record is that plaintiff was denied group therapy due to his disruptive and violent behavior. Plaintiff offers no evidence that any of the defendants were aware of, and disregarded a substantial risk of harm caused by the denial of group therapy (particularly given the individual mental health care that was provided). Indeed, according to Dr. Elmore, plaintiff's mental health improved, without medication, while he was housed in the structured environment of BHU. At best, plaintiff has demonstrated a difference of opinion between the mental health staff and plaintiff concerning the appropriate psychiatric care.

Further, plaintiff was not placed in IMU until his behavior no longer supported the diagnosis of a thought disorder, and he was reclassified as MH2. The fact that plaintiff was not "credited" for his three months in BHU against his time in IMU, does not rise to the level of an Eighth Amendment violation absent a showing that his subsequent confinement in IMU deprived him of humane conditions of confinement. Although this court may properly consider the

*duration* of the deprivation of a basic necessity under the Eighth Amendment,[4] plaintiff fails to allege that he was deprived of any such necessity while in IMU. Rather, he complains simply of its six month duration. *See* Amended Complaint at 3. Based on this record, there is no genuine dispute of fact as to whether defendants were deliberately indifferent to plaintiff's serious mental health needs or other risk of serious harm during plaintiff's confinement in IMU.

Based on the foregoing, summary judgment is warranted on the basis that there is no genuine dispute of material fact as to whether defendants were deliberately indifference to plaintiff's serious mental health needs while he was confined in special housing. Alternatively, defendants are entitled to qualified immunity on the basis that existing precedent does not place this constitutional question beyond debate. *See Shinault*, 776 F.3d at 1032.

///

///

///

///

///

---

    [4] *See Hutto v. Finney*, 437 U.S. 678, 686-87 (1978); *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).

13 - OPINION AND ORDER

## CONCLUSION

Based on the foregoing, defendants' motion for summary judgment (#59) is GRANTED, and this proceeding is DISMISSED, with prejudice.

IT IS SO ORDERED.

DATED this _10_ day of March, 2015.

*Malcolm F Marsh*
Malcolm F. Marsh
United States District Judge